## Westinghouse Electric Corporation v. United Electrical, Radio & Machine Workers of America et al. (C. I. O.)

*Saul, Ewing, Remick & Saul,* for plaintiff.
*Saul C. Waldbaum,* for defendants.

BROWN, JR., J., April 12, 1946.—The purpose of this bill in equity is to enjoin and restrain the defendants from preventing or attempting to prevent, by mass picketing, violence, intimidation or coercion, any person or persons from freely entering or leaving plaintiff's premises at 3001 Walnut Street, and 120 South 30th Street, Philadelphia.

The case is presently before the court upon plaintiff's motion for a preliminary injunction. At the hearing in open court, evidence was presented during six days by plaintiff in support thereof and by defendants in opposition thereto, and the witnesses called by each party were examined and cross-examined by their respective counsel.

The Act of June 9, 1939, P. L. 302, amending the Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, states explicitly that "this act [that of 1937] shall not apply in any case" specified in the Act of 1939, that is, the later act "completely restores to the courts of common pleas the equitable powers exercised by them prior to the Act of 1937, for causes which fall within the terms of the 1939 Amending Act": Carnegie-Illinois Steel Corporation v. United Steel Workers of America, 353 Pa. 420, 428. Thus, the Act of 1937 does "not apply in any case", as prescribed in section (d) of the Act of 1939, 43 PS §206(d):

"Where in the course of a labor dispute . . . an employe, or employes acting in concert, or a labor organization, or the members, officers, agents, or representatives of a labor organization or anyone acting for such organization, seize, hold, damage, or destroy the plant, equipment, machinery, or other property of the employer with the intention of compelling the employer to accede to any demands, conditions, or terms of employment, or for collective bargaining."

Accordingly, if there was a *seizure* or a *holding* of plaintiff's property by defendants within the meaning

of that provision, the Act of 1937, and the restrictions imposed thereby, would "not apply in" the present case.

Defendants presented as an affirmative defense to the motion that plaintiff has not come into equity with clean hands, in that it has not made reasonable efforts to settle the labor dispute between the parties.

The determination of these questions depend, of course, upon the facts and the principles of law applicable thereto.

After careful consideration of the oral testimony of the witnesses and the other proofs offered at the hearing, as well as the requests for findings and conclusions submitted by and the arguments of counsel for both sides, the facts are found to be:

1. Plaintiff, Westinghouse Electric Corporation, is a Pennsylvania corporation having its principal executive office in Pittsburgh, Pennsylvania. It is engaged in the business of manufacturing, selling and servicing electrical equipment, apparatus and appliances, and in connection with such business it owns and occupies numerous plants and places of business throughout the United States, including, among others, premises known as No. 3001 Walnut Street, Philadelphia, which is owned by plaintiff, and premises known as No. 120 South 30th Street, Philadelphia, which is leased by plaintiff. (These two properties and the use made thereof are more particularly described in paragraph 4 of the bill, which description is incorporated herein by reference thereto.)

2. Defendant, United Electrical, Radio & Machine Workers of America, (CIO), is a voluntary unincorporated association composed of a number of voluntary unincorporated associations called "Locals", of which defendant, Local III United Electrical, Radio & Machine Workers of America, (CIO), is one.

3. Defendant Local III is likewise a voluntary unincorporated association composed of and represent-

ing certain of the production, maintenance and other employees of plaintiff at the above-described properties in Philadelphia.

4. The individual defendants include the following members of defendant unions who hold offices therein as set forth opposite to their respective names:

| Name and address | Office and Committee |
|---|---|
| John G. McWilliams<br>181 North Line Road<br>Newtown Square, Pa. | President; member of Executive Committee |
| Jacques Rubsamen<br>3617 Locust Street<br>Philadelphia, Pa. | Vice President; member of Executive Committee |
| Carlton C. Hooks<br>3357 Arch Street<br>Philadelphia, Pa. | Financial Secretary |
| Michael Klusman<br>3539 Ainslie Street<br>Philadelphia, Pa. | Treasurer |
| Gilbert Reagan<br>704 Fourth Avenue<br>Prospect Park, Pa. | Recording Secretary; member of Executive Committee |
| Clarence H. Smith<br>54 West Stratford Avenue<br>Lansdowne, Pa. | Chief Steward; member of Executive Committee |
| LeRoy H. Deardorff<br>5234 Chester Avenue<br>Philadelphia, Pa. | Sergeant-at-arms |
| Charles W. Graul<br>2040 East Chelten Avenue<br>Philadelphia, Pa. | Trustee; member of Executive Committee |
| Edgar H. Kulp<br>1139 West Somerset Street<br>Philadelphia, Pa. | Trustee |
| Leo Peirce<br>6029 Large Street<br>Philadelphia, Pa. | Trustee; member of Executive Committee |

Francis White
  2223 West Tioga Street
  Philadelphia, Pa.

International organizer for the United Electrical, Radio & Machine Workers of America (CIO)

Harry Block
  1810 Widener Place
  Philadelphia, Pa.

International Vice-President of United Electrical, Radio & Machine Workers of America (CIO)

5. The number of employes who are employed by plaintiff at premises 3001 Walnut Street and 120 South 30th Street, and who are in the bargaining unit represented by Local III, is approximately 246. The number of employes who are employed by plaintiff at premises 3001 Walnut Street and 120 South 30th Street, and who are *not* included in the bargaining unit represented by Local III, is 448, including supervisory personnel. Of this number, approximately 400 are represented by the Middle Atlantic District Salaried Employees' Association, an affiliate of the Federation of Westinghouse Independent Salaried Unions, which is not connected with defendant unions.

6. On December 13, 1945, the membership of defendant United Electrical, Radio & Machine Workers of America, (CIO), voted to go on strike, and plaintiff was so notified the following day. On or about January 5, 1946, defendant union notified plaintiff that on January 15, 1946, the employes in the bargaining unit represented by defendant Local III would go on strike.

7. On January 4, 8, 11, and 14, 1946, conferences were held between representatives of plaintiff and representatives of defendant unions, at which conferences defendant unions through their representatives asserted that no employe of plaintiff would be permitted to enter its premises after the beginning of the

strike without the permission of or use of a pass issued by defendant Local III.

8. During these conferences plaintiff's representatives stated that access to its files, records and other documents located in the two above-mentioned properties would be essential during the strike in order to insure the successful continuance of its business after the termination of the strike, and requested that all of its employes not included in the bargaining unit represented by defendant Local III be permitted to enter the premises freely and at will during the strike, but defendant unions through their representatives repeatedly refused such permission.

9. On January 15, 1946, defendant unions caused plaintiff's employes represented by them to strike at plaintiff's premises 3001 Walnut Street and 120 South 30th Street, Philadelphia; and on that date defendants established pickets at plaintiff's premises with the intention of preventing any person from entering the buildings without permission from defendants. Thereafter such picketing continued at the premises twenty-four hours a day every day up to the present time, the number of pickets varying according to the time of day, the day of the week, and the extent of the efforts made by plaintiff's employes to obtain entrance.

10. From the beginning of the strike on January 15, 1946, up to the present time, defendants have caused plaintiff's premises to be picketed, particularly during the hours when its employes had been accustomed to go to and from work, in such a manner as to obstruct and block the entrances by means of massed pickets, constituting a physical barrier across the entrances, preventing ingress to plaintiff's buildings, and denying peaceable entry to all persons, including employes and others having business with plaintiff, who are not approved by or who do not present passes issued by defendant Local III in its sole discretion.

11. From the beginning of the strike on January 15, 1946, up to the present time, such mass picketing has been accompanied by express and implied threats to forcibly resist the passage of persons attempting to enter plaintiff's premises and to submit them to indignities or physical harm; and in some instances actual force has been used by the pickets to prevent plaintiff's employes and others from entering the premises.

12. Plaintiff, when the strike was called, in order to eliminate the possibility of any violence, made no attempt to gain access to its premises for the purpose of having work that was vitally necessary to it performed by employes who were not members of defendant Local III or of the bargaining unit represented by the latter, although such non-striking employes were at all times ready and willing to perform their customary work wherever requested by plaintiff.

13. Plaintiff has made numerous attempts by consultation with officers of defendant Local III to reach an agreement that the entry of such non-striking employes would not be physically opposed by the pickets. The last such attempt occurred on March 8, 1946, when plaintiff's representatives proposed to defendants that, in consideration of a promise by plaintiff not to engage in any production work at 3001 Walnut Street, its employes in the Sales and Accounting Departments, who are not in the bargaining unit represented by defendant Local III, and non-employes of the corporation having business with such departments, should be permitted to enter and leave premises 3001 Walnut Street without interference from the pickets. But on March 15, 1946, defendant Local III, through its president, John G. McWilliams, advised plaintiff that this proposal had been rejected by defendant unions.

14. On March 18, 1946, massed pickets numbering approximately 125 to 150 obstructed the main en-

trance to plaintiff's premises at 3001 Walnut Street, and prevented employes of plaintiff from obtaining entrance for the performance of their duties there.

15. On March 19, 1946, approximately 40 to 50 pickets massed in front of the main entrance to premises 3001 Walnut Street and prevented plaintiff's employes from entering that building for the performance of their normal duties; and on March 20, 21, and 22, 1946, approximately 30 to 40 pickets massed in front of this main entrance again preventing employes of the plaintiff from gaining entrance.

16. As testified to by 16 witnesses, on more than 30 occasions, from January 18, 1946, to the present time, employes and other persons attempting to enter plaintiff's premises without a pass issued by defendant Local III were prevented from doing so by defendant's pickets. In some instances actual force was used by the pickets, while in others interposition of the pickets' bodies was sufficient to prevent entrance.

17. Defendants have repeatedly advised plaintiff and plaintiff's employes that it will be impossible for such employes, whether in the bargaining unit or not, to gain admission to plaintiff's premises without a pass issued by defendant Local III.

18. Plaintiff has not entered into any agreement with defendants, either before or during the strike, that only those persons bearing passes issued by defendant Local III, or having defendants' or the pickets' permission, shall be permitted to enter plaintiff's premises, or that such passes or permission is necessary to gain access thereto.

19. Defendants have continuously maintained throughout the strike pickets at each of the entrances to plaintiff's premises which are available and normally used for entrance.

20. At all times during the strike, when anyone approached seeking admission, the pickets, whether in

large or small numbers, massed themselves in front of the entrances which they were picketing. If the person seeking admission presented a pass issued by defendant Local III, the pickets made way for him. If no pass was presented, the pickets did not open a passage except for a few persons approved by them.

21. Defendants' actions in excluding plaintiff's employes, who are not in the bargaining unit represented by defendant Local III, from access to plaintiff's premises has caused and will continue to cause plaintiff irreparable injury, in that plaintiff is seriously impeded and in many cases completely prevented from carrying on its essential business activities, including the supplying necessary data to salesmen; taking inventory and performing other necessary duties in connection with the termination of Government contracts; conducting engineering work on the design of new products; continuing experimental work previously started in connection with proposed new designs for highly specialized products required by the United States Navy, and maintenance of elevators where installed throughout the Philadelphia district.

22. The presence of non-striking supervisory and office personnel in plaintiff's premises during the course of the strike is of the utmost and urgent importance to plaintiff, and their exclusion by the picket causes an interruption in its vital activities necessary by way of preparation for future business and production, thus causing irreparable and substantial damage to it, such damage being increased proportionately in accordance with' the length of time such employes are prevented from entering its premises.

23. Plaintiff has used fair, ethical and legal methods in its negotiations with defendant unions concerning wages, hours and other conditions of employment.

24. Temporary cessations of negotiations have been due to differences between plaintiff and defendant unions as are apt to arise in collective bargaining, and

plaintiff has not created conditions or made proposals making proper and just solutions impossible.

The pertinent principles of law and their application to the facts thus found and established by the evidence are clear.

"Forcibly to deny an owner of property or his agents and employes access to that property . . . is in practical and legal effect a seizure or hold of that property": Carnegie-Illinois Steel Corp. v. United Steel Workers of America, supra, 429; Westinghouse Electric Corp. v. United Electrical, Radio & Machine Workers of America, 353 Pa. 446, 456. As was stated by Mr. Justice Horace Stern in the latter case (p. 455):

"It certainly is not necessary in order to constitute a seizure and holding that each and every brick and stone, each and every room and floor, be physically grasped and possessed. If the owner be deprived of the use and enjoyment of the property so that it becomes utterly valueless to him it is effectively seized and held whether the force employed for that purpose be exerted within the building or immediately without. The control of the entrances is the control of the plant."

In the former case, Mr. Chief Justice Maxey pointed out (p. 430), that the "holding or seizure of even one gateway" has the same effect as the "seizure of the entire plant".

In dissenting in the Carnegie-Illinois Steel case, supra, Mr. Justice Jones said (p. 444):

"Picketing to be lawful must be peaceful. Where picketing consists of people massed about a plant or its entrance gates with the compactness of a Macedonian phalanx, *the fact that the picketing remains peaceful may be so only because no one can with safety attempt to go through the line.* In such circumstances, it could hardly be thought a violent legal conclusion to hold that the plant had been seized and was being held against the owner's right to it." (Italics supplied.)

In the present case, as in the Westinghouse Electric case, supra (pp. 453, 454) :

"The pickets walked closely behind one another . . . in a compact circle or elliptical formation and so near to the entrance that it would have been impossible for anybody to edge in without running the gauntlet thus established. In some instances [persons] seeking to enter were prevented from so doing by force . . . in others, those who were more cautious resigned themselves to the inevitable and—reluctant to engage in a scuffle that might possibly lead to bloodshed—departed in peace."

As Mr. Chief Justice Maxey said, in his concurring opinion in the Westinghouse Electric case, supra (p. 461) :

"To keep [persons] out of the plaintiff's plant by a show of force as was done in the instant case by defendants' agents (for example, by a 'captain of pickets' and others), was an assumption of dominion over another person's property and was, in legal effect, a lawless seizure of that property. It was as much a lawless seizure of another's property as would a striking chauffeur's forcible refusal to let his employer or the latter's family enter the employer's automobile. That the defendants claimed the right to control ingress to plaintiff's plant and maintained that claim by hostile force, is completely proved. It was shown that at one gate 'a chain of thirty or forty pickets was marching in a circle' directly in front of it. . . . But even if the number of pickets 'amounted to not more than a corporal's guard' . . . *that* would be wholly immaterial to the issue before us. If there was only *one* picket and if he succeeded in blocking ingress to the plant by a display of force, his act would be lawless and enjoinable."

The "assumption of dominion over" plaintiff's property by defendants was also proved by their permitting only such of plaintiff's employes and other persons as were approved by them to enter its buildings. Thus:

". . . when the strike was in contemplation and before it had actually started, a number of meetings were held between officers of the defendant Union and representatives of the plaintiff corporation in the course of which the former . . . 'made it quite clear that anyone not agreed to on the list would not get admittance through the picket line' . . . to the plant . . . [and also that] 'it was their intention to permit nobody to enter the plant except those who had passes issued by the Union'. . . . A list was prepared by the Company which was carefully examined by the Union and a large number of the names rejected by it; it approved about [300] in number. . . . The consent of the Union . . . given to the admission of the persons listed [and also such as were approved by it] naturally carried with it, as an implied corollary, that it would deny the right of entrance to all others; . . . This avowed policy of the Union was not merely academic or ideological, but was implemented by positive action in [most] all the instances when it was put to the test": Westinghouse Electric Corp. v. United Electrical, Radio & Machine Workers of America, supra, 450-452.

That the pickets allowed several persons, whose names were not on the approved list, to enter without requiring them to obtain passes was merely an exercise of the "right to control ingress to plaintiff's plant" claimed by defendants, and it did not lessen the illegality of their claim or their acts in maintaining it. There is, of course, *no* basis, for such a claim in fact, or in law or equity. As expressed by Mr. Chief Justice Maxey in his concurring opinion in the Westinghouse Electric case, supra (p. 463):

"The right . . . to deny an owner of property or his representatives and employes access to that property has never been recognized in this Commonwealth or in this nation."

"Without attempting to reproduce the great mass of testimony in detail it is sufficient to say that its cumu-

lative effect is to establish beyond any doubt that the pickets . . . never intended to let any person enter [plaintiff's property] without their consent and that they enforced that intention and that policy by means of persuasion when such methods were sufficient, but also, when necessary, by intimidation and threatened violence": Westinghouse Electric Corp. v. United Electrical, Radio & Machine Workers of America, supra, 454.

Although "isolated instances of the application of force, violence or intimidation to prevent persons from entering an employer's plant" may not necessarily amount "in legal effect to a seizure and holding of the property", when, "as here, such occurrences are for the purpose of implementing an expressly declared intent or policy to prevent such ingress . . . there is a seizure and holding within the meaning of the Act of 1939". Idem, 456. Accordingly, the restrictions imposed by the Act of 1937 are not applicable in the present case.

On the question of whether or not plaintiff has come into equity with clean hands, considerable evidence was presented, but the findings relating to this subject are comparatively brief and general in character for the reason that the determination of specific facts bearing upon the pending negotiations between the parties concerning wages, hours and other conditions of employment might adversely affect satisfactory settlement of the matters under discussion. It appears, however, that plaintiff's conduct in such efforts has not been improper, and also that the temporary cessations of the negotiations have been such as are apt to occur in collective bargaining when each side is endeavoring to secure most favorable terms from the other. The failure of mediation has not prevented the parties themselves from continuing their conferences, and the cordial relations existing between them before this strike augurs well for a similar adjustment of the various points upon which they are in disagreement.

In Devon Knitwear Co., Inc., et al. v. Levinson, 19 N. Y. Supp. (2d) 102, cited by defendants, the motion to strike out the affirmative defense that plaintiff-employers were not entitled to equitable relief because of coming into court with unclean hands, in that they had refused to bargain collectively with the union upon the latter's request, was denied. In the instant case, proof in support of such a defense was admitted, but it was not sustained by a fair preponderance of the evidence. Plaintiff has not refused to bargain collectively, and it has not been guilty of unfair labor practices.

In David Adler & Sons Co. v. Maglio, 200 Wis. 153, also cited and relied on by defendants, the Supreme Court of Wisconsin said, in refusing the plaintiff relief on the ground that it had not come into equity with clean hands (p. 157) :

"The plaintiff had the undoubted right to determine that its business should be run as an open shop, just as the employees had undoubted right to refuse to sign the proposed contract and to insist upon their rights under the existing contract. But neither the plaintiff nor its employees had a right to resort to violence or unlawful means to secure the result desired by them."

In that case the strike followed the plaintiff's locking out of its employes, but in the present case there was no such conduct by plaintiff before the strike, and defendants are the ones who have resorted to "unlawful means to secure the result desired by them", that is, they *seized and held* plaintiff's property "with the intention of compelling" it "to accede to" their "demands": Section (*d*), Act of 1939, supra.

Mr. Chief Justice Hughes, in delivering the opinion of the Supreme Court in Labor Board v. Fansteel Metallurgical Corp., 306 U. S. 240, said (p. 253) :

"To justify such conduct [the ousting of the owner from the lawful possession of its building] because of the existence of a labor dispute or of an unfair labor practice would be to put a premium on resort to force

instead of legal remedies and to subvert the principles of law and order which lie at the foundations of society."

In the Carnegie-Illinois Steel case, supra, Mr. Chief Justice Maxey, speaking for the court, said (p. 430) :

"When a 'picket line' becomes a picket *fence* it is time for government to act. Collective coercion is not a legitimate child of collective bargaining. The forcible seizure of an employer's property is the very essence of communism."

Consequently, in the instant case defendants have not established that they are entitled to the protection of the affirmative defense that plaintiff has not come into equity with clean hands.

Defendants contend also that they are entitled to have the disputed issues of fact tried before a jury under Equity Rule 61. But the rule requires that a case be "at issue", and that stage has not been reached in the present case. A so-called "Partial Answer", consisting of two paragraphs, has been filed, but it does not conform to Equity Rule 52, which requires a defendant to "specifically admit, deny or qualify" in his answer "each and every allegation of the bill, in paragraphs corresponding to the numbers thereof", there being 27 such paragraphs in this bill. Moreover, the case is before the court, as above-stated, upon plaintiff's motion for a preliminary injunction and not upon final hearing. It is to be observed that under Rule 61 the court must "find there is a substantial dispute, which should be thus tried", i. e., before a jury, and also that when the issues are framed "in the form of separate questions, . . . the verdict rendered shall consist only of answers to the questions framed", which "answers made only to inform the conscience of the chancellor shall not be binding upon him in deciding the case".

No exceptions were taken to the rulings during the course of the hearing, and there are no other matters requiring discussion.

It follows, therefore, that plaintiff is entitled to a preliminary injunction against defendants. It is to be noted that:

"When courts issue injunctions in cases like this, they are *not* (as some claim) 'throwing the weight of their power on one side of the balance in an economic controversy arising out of the employer and employe relationship' any more than a baseball umpire who enforces 'the rules of the game' against a *disorderly* and *lawless* player is 'throwing the weight of *his* power' in favor of one of the contestants": Carnegie-Illinois Steel Corp. v. United Steel Workers of America, supra, 433. "No law-abiding citizen objects to being officially informed that he cannot act unlawfully." Idem, p. 431.

### Order

And now, to wit, April 12, 1946, evidence having been taken and witnesses having been examined and cross-examined at a preliminary hearing held on April 2, 3, 4, 5, 8, and 9, 1946, and it appearing to the court that immediate and irreparable loss and damage will result to plaintiff before the case can be fully heard on the merits if this injunction be not issued, it is, on motion of counsel for plaintiff, ordered and decreed that an injunction issue enjoining and restraining defendant, United Electrical, Radio & Machine Workers of America (CIO), and defendant Local III, their officers, representatives, agents, and members and all other persons acting in concert with them, under their direction or on their behalf (1) from preventing or attempting to prevent, by mass or chain picketing, violence, intimidation or coercion, any person or persons from freely entering or leaving plaintiff's premises or properties located in Philadelphia, Pa.; (2) from in any other manner seizing or holding said premises or properties; (3) from having in front of or in close proximity to any entrance to plaintiff's premises at 3001 Walnut Street and 120 South Thirtieth Street, Philadelpnia, more than three pickets at any one time, such pickets at

all times to be in motion and spaced not less than 10 feet apart in a single line and to conduct themselves in such manner so as not to block or interfere in any way with the use of such entrances by any person or persons desiring to enter or leave said premises on foot or by vehicle, and (4) from congregating in large numbers, loitering or gathering near to or about said premises or the entrances thereof at any time; and it is further ordered and decreed that this order and injunction shall be effective immediately upon plaintiff's filing an injunction bond in the sum of $5,000, and shall continue until final hearing.

NOTE.—In the determination of the number of pickets to be permitted at each of the entrances to plaintiff's properties, the court relied upon the fact that one was described as the main entrance and as being approximately 22 feet wide.